Good morning and welcome to the Ninth Circuit. Please be seated. We are pleased to have Judge Frederick Block of the United States Court for the Eastern District of New York sitting with us for a few days. Judge Gould, who is actually the presiding judge in this panel, has asked me to preside in the courtroom. Judge Gould, can you hear us? Yes, I can hear you. Good morning. And if Judge Gould starts to ask questions, please pay attention. We have three cases submitted today and three to be argued. So we will begin with Singh v. Whitaker. Oh, and the Petitioner or Appellant should reserve time if you want to. We are not going to waste your time for you. The secret is I will give you one minute in rebuttal in any event, but not more than that. Thank you. Thank you. Good morning. May it please the Court, Joseph Sigons of Ford, Petitioner. The two issues in this appeal are whether substantial evidence supports the IJ's finding that the well-founded fear presumption was rebutted by changed country conditions, and, secondly, whether the Board abused its discretion in denying the motion to reopen based upon Petitioner's post-hearing country conditions articles. We have only the motion for hearing in front of us? Pardon me? We have only the motion for reopening before us? No, Your Honor. I believe that the motion to reopen was submitted to the Board during the pendency of the appeal before the Board. Oh, I see. Okay. All right. So we have both. But you're only arguing about the reopening, as I understand it. Well, if I could briefly address the IJ's findings about rebutting the presumption. I believe that's significant. Okay. With respect to that issue, Your Honor, it's significant that there was no individualized analysis inquiry of Petitioner himself whether he could relocate and where he could relocate and whether it's feasible to do so. It's also significant to note that there was only one human rights report that was submitted by the Department in that case, and Petitioner submits there's no evidentiary basis to rebut that presumption based upon that country report. The IJ himself cited to the report, but he stated in so many words that the government, quote, generally provides for freedom of internal movement and that the government generally respected those rights. And precedent has established that generalized information from a State Department report is not sufficient. A true individualized analysis has to be conducted. Exactly what are you talking about, the conditions in the Punjab or what? Conditions in the Punjab and elsewhere, and with respect to the motion to reopen the entire country of India based on what is going on, what is occurring in the country now. What I would propose or submit today is that the IJ did not properly factor in three separate factors, that Petitioner was implicated in a false drug case by the police, and whether that implication of a false drug case would follow Petitioner wherever he located within the country. The IJ failed to take into account the parents' affidavits attesting that the police continued to look for Petitioner after he left India, and that Petitioner was targeted by an influential Hindu with his connections to the police and to political parties. The IJ also failed to factor in that the Petitioner's ability to relocate may have been severely compromised by his uprooting by Mr. Rana, the Hindu, the claimed persecutor, uprooting Petitioner from his land illegally and unjustifiably. Petitioner is a farmer by occupation, and I would submit that in India, Sikh farmers in relation to the land is akin, if you will, to a mother-child relationship. The land provides for the Sikh farmers, and we have a Petitioner here whose family was barely making ends meet before they were able to obtain this land from Mr. Rana. Let me ask you this. The family still resides locally where all of this incident occurred, I think, correct? Yes. His wife, children, are their parents? Yes. So he wants to separate himself from his family and come to the United States and not return to his homeland, correct? Not by choice, Your Honor. He felt compelled to leave, to flee the persecution. He has a brother living 15 kilometers away? Yes. And the brother is safely living? I know there are some incidences, but basically his family resides in the locale. At the time of the motion to reopen, that's what the evidence showed. Now, you know, I did some snooping around to find out a little bit about Punjab, and, you know, I found out that it's 200 miles away from where his hometown is, that it has a population of about 28 million people. About 58 percent of the population are Punjab. Over 75 percent of India's Sikh population lives in Punjab. And the Punjabi state government has been led by Sikhs since 1992. Could he not safely locate to Punjab? I would answer that, Your Honor, with respect to my argument about the motion to reopen. Since the filing of the motion to reopen, which we would submit, establishes prima facie evidence of a changing climate in India that is nationwide. One blog you're relying upon, right? Pardon me? One blog, that 2015 blog by that professor from Trinity, is that what you're relying on? Well, I believe that there are other articles that establish that there is a climate of persecution and oppression against minorities. Minorities are at risk in India, be they Sikhs, Muslims, or Christians. So are you telling me that every Sikh should be able to come to the United States because of the fact that it's not safe to be in Punjab, which is really a Sikh community? Not at all, Your Honor. I believe, however, in this particular circumstance where we have a Sikh farmer who was uprooted from his land by his claimed persecutor, and his ability to relocate either within his community or outside the community was severely compromised. It was basically a land dispute that had its origins between his family, I guess, and this person, Rana, one individual? Yes. I would submit that it extends. It's more than that, Your Honor, if I may, respectfully. You have a person who is Sikh not only by religion but by ethnicity, and he was persecuted by this Hindu gentleman, and he was implicated in a false drug case by the police, supposedly in connection with Mr. Rana, the claimed persecutor. It's difficult to imagine or envision Petitioner being able to go back to his home country, try to restart his life as a farmer when it was difficult to begin with. They were barely making ends meet. Well, but that's — I mean, there are sort of two strains here. One is whether it was reasonable, and the other was whether it was safe, right? Yes. And on the reasonableness part, why wasn't the — which is what you're now arguing. Yes. Why wasn't the IJ's and BIA's conclusion at least supported by substantial evidence, i.e., he was a young man, he could farm? I mean, I think Judge Block's implication that we're comparing it to coming here. You know, he's unlikely to be able to farm here either. So the question is why is it comparatively more reasonable for him or less reasonable for him to go to the Punjab, even if there are some difficulties, given his age and given the fact that he does have a skill and so on? Yes. There's no evidence in the record, Your Honor, to show that he's — he can engage in other occupations other than as a farmer. So I would submit that a remand is reasonable in this case to further develop the record to conduct a true individualized analysis as to whether or not this gentleman can safely relocate and whether it's feasible to do so. Again, he's implicated in a false drug case by the police. Whether that factors in as to whether he can relocate, I would submit it does. And the fact that he is a subsistence farmer barely making ends meet, he paid 500,000 rupees for the land, 5-acre plot of land that was illegally and unjustifiably taken by Mr. Rana. And with respect to relocating either to where his brother is or where, I guess, his brother is, the problems there were that they were essentially too close? I mean, that Rana could have found him? That we would submit that if he goes back to India and he relocates outside of where his family is living — But his brother is 15 kilometers away in another State, as I understand it. Yes. It's a neighboring State. Right. The — we would submit that, or Petitioner would submit that it would be easy for the police, if they had a motive to do so, or Mr. Rana, to seek out Petitioner by contacting his family. Petitioner would not go back and live in the same community. He would try to live elsewhere. But we would submit that on remand it could be more developed or further developed as to why he cannot safely and reasonably relocate. But the burden on this is on the government. So if there's something wrong, I assume they lose, don't they? Yes, the burden is on the government. And we would submit that the motion to reopen factors in what — since the motion to reopen was filed, there's an increasing climate of intolerance. And we would ask for remand for the Petitioner to further develop the record as to what is actually going on in the — not only in the Punjab, but in the State of — in the nation of — in the country of India, rather. There's an increasing extremist Hindu movement afoot — Hindu, Hinduism, Hindustan — that affects minorities. Okay. Your time is up. You may have a minute in rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Carmel Morgan on behalf of the Respondent, the acting U.S. Attorney General. Substantial evidence in this case supports the denial of protection and relief, and the Board did not abuse its discretion in denying the motion to reopen. Well, specifically, it's your burden to show that he could relocate, correct? It's your — the government's burden is to show that he can relocate safely someplace in India. Yes. How did you sustain that burden? There are a number of things that the immigration judge considered. The State Department report played a major role. In addition, the petitioner's own testimony about the safety of his family members nearby also was a significant factor. Well, the family — he was farming on the land, not the family members that were nearby, right? He, the petitioner in this case, is involved in the land dispute that resulted in his persecution, yes. And the family members, his father, his wife and child, remain, as I understand it, at or near that location. Two brothers live the 15 kilometers away, and the wife's family also lives maybe 20 kilometers away in a neighboring state. But we don't know that the brothers were involved. The brothers apparently were not involved. Questions were asked of the petitioner. They had apparently no connection with this man who instigated the land dispute. So — but his father was involved? Was that — Yes. The father and the son together apparently paid for the land and — The father is still there. And the father is still there, correct. So we have this blog post that goes back to 2015 by this American-born Sikh who teaches religion at Trinity University. And that was not considered. And do you think that it ought to be considered, or is it an irrelevancy? With regard to the motion to reopen, one of the things that the petitioner needs to do is to show that the evidence is a material change. You also have to show that it's new evidence that couldn't have been presented below. While the blog post occurred later, it's clear from the record as it exists that there have been long, ongoing tensions of a religious matter within India. I don't think this particular blog post is likely to change the outcome of the case. So it wasn't an abuse of the board's discretion to deny the motion to reopen. When you said the country conditions report, was that with regard to the Punjab? Is that what you were talking about? The country conditions report does not state that there's anything resulting in a well-founded fear of persecution for most Sikhs living in the Punjab. There are apparently no extrajudicial killings that were reported. And so, yes, the immigration judge relied on the State of Punjab would be a safe place, among others, for the petitioner to relocate. So the only thing weighing against that is that one isolated blog, that does take a different position, right? I'm not sure that's the only thing. That particular blog post wasn't before the immigration judge. That was submitted subsequently as a motion to reopen. Yeah. But the question is, should that be considered or not, or should we just disregard it? Well, it was considered by the board. We presume that the board considers all the evidence before it. They just didn't find that it met the very heavy burden to reopen the proceedings. But they didn't address that specifically, did they? No. They didn't address that specifically. I think it's fair. He submitted, in addition to the blog post, a number of other articles and reports. Is there a very heavy burden to reopen the proceedings when they're so before the BIA? It's not terribly unusual for the BIA to remand to consider additional evidence. I think the burden It's more like a motion to remand at this point, not really a motion to reopen. They would be construed in a similar manner. I think that I never thought there was at that juncture a very heavy burden. I think the heavy burden is connected to the fact that the immigration judge already completed the proceedings. Well, right. Right. So there's a strong interest in finality. And so I think that's why the burden is considered heavy. But it's not final. That's why it's not a heavy burden. It's still not final. Okay. I mean, right? That's true. There's no finality at that point. That is correct, Your Honor. Okay. So what else? Is there anything else you want to ask? What about the — I mean, there was some reliance on the ability to relocate to where his brothers were. Brother. I thought it was one brother. I think it's two, yes. But that was right nearby. If somebody was really after him, that wasn't going to be much use. It's — there's no evidence in the record other than the Petitioner's own hearsay testimony that — That was credited. I mean, you have to take this case as you find it. I mean, it was credited that, in fact, there was — that his story was correct, that there was past persecution, that there was a nexus, and now were the burdens on the government, right? Yes. With regard to past persecution, his testimony was credited. With regard to his testimony about the police being able to reach him wherever he would go within India, the immigration judge — But I'm not talking wherever he would go. We're talking 15 kilometers away where his brothers were living. Yes. And where it would be no mystery to somebody in a small area, I gather, that that's where his brothers were living. So I don't know why that's a useful place to go. He doesn't necessarily have to go there. The immigration judge also pointed out he could join his wife's family in another State, although that was nearby, too, or — But that was not in another State. It was the same State. I thought it was another State. About 20 kilometers away. But it may be also that the immigration judge pointed out that he could relocate to Punjab, which Judge Block pointed out is also not terribly far away and has a huge population, and so — It is far away. It's 200 kilometers away. Yeah. So, is there anything else you want to add? I think it was reasonable for the judge to make the inference that the individual who persecuted the petitioner is not influential on a nationwide level, such that the police would follow him wherever he would go. The petitioner himself admitted it was a local matter during his credible fear interview, and in his father's affidavit, the father mentions that this individual spoke to party officials only on the State level. I did want to say, too, with regard to an individualized analysis, the government did do an individualized analysis because the government — I mean, the immigration judge considered petitioners family members with regard to his potential for safety, and the and other factors that weighed in favor of reasonable relocation. If you have no further questions, then the government asks that you deny the petition for review. Thank you very much. Thank you. No questions here. Sir, anything? Just briefly, if I may, Your Honor. The record establishes that Petitioner has no family in the Punjab. The IJ, at the time of his decision — But he has no family here. I mean, that's the tension here. It's a peculiar standard, because in terms of reasonableness, the fact that he may have a hard time in India, you know, seems to me you have to factor in the fact that he's not having an easy time here, either. Understood, Your Honor, but it's not by choice. He was compelled to leave his country, his family, to seek — Well, that's the question, not the answer, right? Yes. The question is, was he compelled to leave his country or could he have gone somewhere else in his country and been no worse off than he is here, essentially. And I don't ever see that standard applied. But it seems logical to me that in terms of reasonableness, we have to look at whether his difficulties are going to be extreme to the degree that it makes sense to have him here. Well, the fact that his family may be in India and living safely belies the fact that he was the one who was persecuted, so the persecutor had — But, I mean, you said he has no family in Punjab, right, and that made it unreasonable. I mean, it's the tension between the reasonable issue and the safety issue. I mean, I think you're — that the safety issue is more cogent than the reasonableness issue in this case. And I would submit that that's addressed by the motion to reopen, articles that show that there's a worsening climate in India that doesn't just extend to the Punjabi. One article. You say articles. I don't see more than one. I see that blog. I don't see anything else that supports the notion that he cannot safely live in Punjab other than one blog. And I imagine he's closer to his family from Punjab than he will be from the United States. Yes. I would submit, Your Honor, that the other articles in the motion to reopen do address that there's a climate of oppression that was developing at that time, but it has only worsened since that time. So with a remand, perhaps Petitioner could further develop the record as to how the current country conditions here in 2018 would affect his well-founded fear and his ability to relocate. Okay. Thank you very much. Thank you. The case of Singh v. Whitaker is submitted.
judges: Gould, Berzon, Block